Our first case for argument today here at Boston University is 24-1118, In Re. Bayou Grande Coffee Roasting Company. Counsel, how do I pronounce your name? Andre Littman. Mr. Littman, please proceed. May it please the Court, Andre Littman, representing the appellant, Bayou Grande Coffee Roasting Company. The ultimate issue in this case is whether Bayou's trademark, Kahwa, for coffee shops and cafes is eligible for registration on the primary register. The evidence in the record provides a straightforward answer to this question. The evidence in the record shows that there is a Central Asian drink made with green tea and spices called Kahwa. The record also shows that there is no evidence of any American coffee shop or cafe, including my clients, ever serving this drink. Okay, so we evaluate or review this case, as the trademark office did, from the standpoint of who? The reasonable person, the ordinary consumer? Who is the vantage point from which we evaluate whether this is generic or suggestive or descriptive? Who? From whose vantage point? From an ordinary consumer. An ordinary consumer. So someone who would go to coffee shops or cafe shops. Yes, Your Honor. Okay, so that basically is all of us, right? Absolutely. Okay, so pretty much anybody here is somebody from whose vantage point you would look at this? Absolutely, yes. I had never heard this word before, ever. Like, is it, I mean, I guess apparently these coffee shops are mainly in, like, Florida and the South United States, is that right? In Texas, too, now. Texas? Okay.              But I, for one, had never heard this word. So what does it mean for a trademark to be determined to be generic? So a trademark is generic if it identifies a type of a genus, so if it's a generic name for a genus. So in the context of coffee shop, a term coffee shop would be generic for a coffee shop because it identifies. Give me a couple examples of other things that are generic trademarks. Apple for fruit, apple. But not apple for computers. But not for computers. Then it becomes arbitrary because Apple has no connection to computers, therefore it becomes arbitrary, which is one of the... Just to confirm, in this case, the board found that kawa is generic for coffee shop? Yes. Okay. And merely descriptive as an alternative. Merely describing a coffee shop. And the reason why the board reached this clearly erroneous conclusion is because this conclusion is not based on the evidence, but rather on a syllogistic policy. Coffee would be generic for a coffee shop? Absolutely, because it's a key aspect. Would tea be generic for a coffee shop? Yes, Your Honor, it would be. What about green tea? Yes, Your Honor, I would say so. So here's my problem. I mean, I understand where you're coming from. I have also never seen this word. I went to a coffee shop this morning that sold tons of different variables of tea and they did not sell this one. But when you were responding to the examiner, you put in a ton of evidence that suggested that an ordinary consumer would know that kawa, an ordinary relevant consumer of the product would know that kawa is green tea, didn't you? Not a green tea. So a kawa is a specific drink that's made with green tea. I think your evidence goes beyond that. It goes to, it's a green tea drink. Yes, it's a drink that's made with green tea as one ingredient and then it has these fragrant spices such as saffron, cardamom. Comparable to chai in some ways. Tea with other things. Yes, Your Honor, I've never had the drink myself, but it sounds like it would be comparable to chai. Yeah. You know, since apparently it's not sold anywhere, none of us have probably had this drink. Although maybe you can buy it online and in stores, I think, if it's not sold in coffee and tea shops. But why isn't that your problem? Is you have put in evidence showing that an ordinary consumer would understand kawa to be a specific type of green tea drink. And if it is, then that's something that everybody agrees is sold in coffee shops. Green tea drinks. Then that makes the board's conclusion a substantial evidence one, doesn't it? Because you put in the evidence showing that a relevant consumer, even though it baffles me that why you put that in, well, I shouldn't say that, you were putting it in because the examiner got it wrong and was trying to say kawa is coffee, which it's not. But if that's the case, if a relevant consumer would understand this to be a green tea drink, which is something that's sold in coffee shops, you're not allowed to get a trademark on coffee. You're not allowed, presumably, to get a trademark on chai or green tea or other kinds of tea or coffee drinks, lattes, whatever. Why is it once you put in evidence showing that a reasonable or the ordinary consumer would understand this, isn't that the end of the game for you? It is not, Your Honor, because what we are evaluating is the connection between the word kawa and coffee shops and cafes. I understand, but your logic would seem to also suggest that you could name a coffee shop chai, because it's a specific form of a tea drink. Your Honor, there would be evidence in the record of coffee shops and cafes serving chai, which... Is it the serving that's important to you? It's the connection in the consumer's mind. So for genericness, which the USPTO does not even try to defend that refusal on this appeal, the word either has to refer to the genus of coffee shops and cafes, but there's no evidence, it is undisputed, that no one has ever used the word kawa to refer to coffee shops in a generic sense. It's only used to refer... Other than just being... I'm a little unclear where your connection is, that it has to be served rather than a reasonable consumer might understand it's the type of product that might be served. Sure, so we look at the word kawa. So when we look at the word kawa, it does not identify a key aspect of coffee shops and cafes, because this specific drink is not served in coffee shops and cafes, therefore it does not identify a key aspect of coffee shops and cafes. So is your argument kind of similar to if I named my coffee shop Whiskey Sour, but we don't actually sell alcohol or whiskey? Like that would not be merely descriptive of a coffee shop, because in fact what I've named my store, is it even sold in my store or stores like my store? Your Honor, absolutely that's... Is that the argument? That is exactly the argument. And in that relation, it would be almost as arbitrary as using Apple for electronics, because this drink is not served. And then for descriptiveness, the analysis is whether the trademark describes an aspect of applicant's services. Our client has never served kawa in their coffee shops. That immediately requires reversal of the descriptiveness refusal, because that word does not describe an aspect of my client's services. Well, is it just your client's services or the group of services that you're seeking the mark for? Meaning, suppose your client decides not to sell decaf coffee, but every other coffee shop in America sells decaf coffee, and you're seeking a mark that includes the word decaf coffee for your coffee shop. You can't evade, could you, descriptiveness just by virtue of saying, well, my client has chosen not to sell this particular type of coffee, even though most coffee shops in America do. Excellent question, Your Honor. So that would take us into the realm of misdescriptiveness. So if the trademark identifies or describes a quality or characteristic of services that the services plausibly have, for example, decaf coffee, but they do not, then the trademark would not be merely descriptive. It would be misdescript, which is what the SPTO, for the first time, insinuated in a footnote in their appellate brief, but that was not raised by the board. And with respect to misdescription, the reason why the board never rejected this trademark as being misdescriptive is because in order to prove misdescription, the trademark still needs to describe a significant aspect of the genus. So with respect to coffee shops, with your example, decaf coffee absolutely describes a significant aspect of the genus, but there is no evidence that kahwa describes a significant aspect of the genus. And then to take it one step further, in order to make a refusal as merely misdescriptive, the SPTO would have the burden of showing that that misdescription, alleged misdescription, would be believable. And in order to do that— You're into your rebuttal time. You can keep going, or do you want to save some? I'll save my time. Thank you. Very good. Good morning, and may it please the court. Michael Chahon on behalf of the USPTO Director. The board's decision should be affirmed because substantial evidence that Bayou, for the most part, put into the record, supports the finding that kahwa, the known name of a tea beverage, is highly descriptive of the services Bayou identified in its application, cafes and coffee shops, services that involve the offering of tea beverages. How do you deal with the position that it's undisputed, that there's no coffee shops or cafes that provide kahwa as a beverage? That's in stark contrast to N. Ray Cordua, for example, which involved the mark Jurassico. Yes, Your Honor. Cordua was a case in the context of genericness. We've addressed the board's refusal for mere descriptiveness. And even without any evidence of a cafe that serves kahwa, the evidence in the record still supports the board's findings because the evidence shows that consumers know kahwa as a type of tea beverage. Maybe not one that's the only thing when I look through the list. Do I know correctly that the evidence that you're relying on here is the Google search results that the applicant provided? There was additional evidence, the evidence showing kahwa products being sold. Which page in the appendix? Sure. The evidence is, let's see, it's referenced in our brief. So there is recipes. What page in the appendix? Sure.  If you look on our brief, this is all the appendix numbers. Just direct me to a page in the appendix. Yes, please. Give me one second. It starts on page 6, so there is an article that's appendix pages 154 to 168, an article that's pages 201 to 222. Which of them shows it was being sold? I understand there's recipes and references and everything describing what it is, but which of them you said just now that your evidence shows it was sold? Okay, it's sold not by a cafe or coffee shop. A kahwa product is available for purchase on Amazon and other places. You agree that there's no evidence that it was sold in a cafe or coffee shop or tea shop? That's right, yes. Isn't that a problem? I mean, this is not green tea. It's not? It's a really specialized form of green tea that apparently comes from three different countries in the world that I think most people here, until they showed up for this case, haven't heard of it. Right, but there's no dispute that consumers, the relevant consumers, cafe consumers, understand kahwa as the name of a tea beverage. But you say there's no dispute. We've got a room full of regular consumers. I mean, look, I'm just going to be really awful to you right now. Have you ever heard of kahwa before you picked up this case? Honestly, no. I know, right? Thank you for being honest. Thank you. But the by use position has always... Do you drink coffee or tea ever? I do drink quite a bit, yeah. All right, well, yeah, me too. Here's the thing. I know they put in all this evidence, but part of it is the posture of this case, which is the examiner got it wrong by trying to translate kahwa with a K as kahwa with a Q, which apparently in Arabic means coffee. If they were trying to trademark kahwa with a Q, they would probably be in trouble because of the translation doctrines, right? So they were trying to get over that to show, oh, no, we're not trying to use the Arabic word for coffee, which I think you probably couldn't trademark for a coffee shop. We're using this specialized green tea beverage that nobody has ever heard of. And the reason they're putting this evidence in is to show that it means something different than kahwa with a Q. But the evidence they've put in shows that consumers know kahwa as a type of tea beverage. I thought it was, like, suggested that the stuff came from Hawaii. That's what I had in my brain when I saw this. I'm like, oh, they're being suggested. They're saying, oh, our coffee beans come from Hawaii or whatever. That's where my head went. But the question is, is there substantial evidence in the record for the board's finding? And there is because the evidence shows that consumers know kahwa as a type of tea beverage. I'm a little troubled by this because you say that consumers, the relevant market is people who go to coffee shops, not people who do Google searches to find obscure tea beverages online. If you can find anything online, how is that evidence of what the relevant consumer here knows? I think Judge Moore mentioned and explained that everybody is a cafe consumer, potentially. I don't think she meant to help you with that comment. But the point is that Bayou's position at the office— Can you connect anything in all that evidence to an actual consumer of coffee or tea at a coffee shop? No, but that's not needed because of what the evidence shows. It shows that kahwa is a type of tea beverage. So your view is that because kahwa is a type of tea beverage, it's as if it was chai. And there's more than that, that tea beverages are standard offerings of cafes. There's evidence in the record, the dictionary definitions, cafe menus that show that tea beverages are standard offerings. When consumers see— But the word isn't tea. It's not.  It's a type of tea beverage. When consumers see kahwa used for cafes, a term that they know is a type of tea beverage— See, they know. See, here's the problem. The ordinary consumer, isn't that the test? The ordinary consumer, not— I mean, like Judge Hughes says, you can find anything on Google. And I have no doubt that this kahwa is a type of tea in some Middle Eastern or Southeast Asian region. I don't even know where. But that doesn't mean it's the ordinary consumer in a U.S. coffee or cafe shop, right? Because we're the ordinary consumers, all of us. No? Yes. It's not just a consumer. It's true. Maybe there are consumers, especially people who maybe descend from particular regions in the world, that are familiar with this tea. But are they the ordinary consumer of a cafe or a tea shop? The evidence shows that the public knows kahwa as a type of tea beverage in the Google searches, in the Amazon. Google knows this. Huh? Google knows it, but does the ordinary consumer know it? Hypothetically, let's say you have a really specific coffee blend or something from Indonesia. And it's only sold in Indonesia. It's only grown in Indonesia. It has a specific varietal name. And somebody here tries to trademark that. And the evidence shows that you can Google it and find out, oh, this is a varietal of coffee. But nobody here knows what it is without Google. Nobody has ever heard of it. Would that be generic? Because under your reasoning, it sounds like it is. The mere fact that that could be identified through a Google search as a coffee blend would mean it was generic for coffee shops. But that can't be the case, you would agree. The question is whether consumers would understand it as descriptive of the services. If the evidence supports a finding that consumers… No, but you're leaping over the fact that the ordinary consumer has to understand it as a tea beverage. Right. And the evidence of record shows that they do. And that's the position by YouTube. What's the evidence? The evidence that we've been discussing, the articles, the Amazon listing showing this product available, they show that consumers have been exposed. So I understand that the products that are available are like tea bags that you could buy from Amazon. That was one of the examples. And then there is also various recipes that somebody could use to make their own kahwa tea, right? That's right. No evidence at all of any place where someone could go and buy this drink. That's right. Already prepared, like at some sort of form of restaurant. That's right. But the evidence shows that kahwa is a type of tea beverage, that consumers know that tea beverages are standard offerings in cafes, and therefore it shows that… But there's no evidence that kahwa tea is a standard offering. There is no evidence that kahwa tea is a standard offering, but there's evidence that tea beverages of this type are standard… So you didn't answer my last hypothetical, but it sounds like your argument is that if we have this single origin coffee from Indonesia that's not sold here, that it's not grown here, but it's available on the Internet, if you want to ship it in from Indonesia, because it's a type of coffee, and coffee is sold in coffee shops, that that would be generic. Even if it's a word nobody had ever heard before. So I understand the… Well, tell me why that hypothetical, which I mean clearly none of us are going to agree that that should be generic. Why that hypothetical is distinct from this case? Because Bayou has taken the position… Without Bayou. I know. They argued this badly. That's their fault, but you still have to defend your case. They made a record, and the record shows that kahwa is known as a type of tea beverage, and that that's a standard offering in cafes. That's our position, Your Honor. It's also… Do you agree, though, that it is the vantage point from which descriptiveness is measured is the average purchaser, not the average purchaser of kahwa, not the average purchaser even of tea, but the average purchaser within the description that the goods are going to cover, which is coffee and cafe shops? Yes, that's right. It's the customer of the services at issue. Right. Okay. So there's also the services that Bayou identified in its application, which is the board noted on page 22, are services broadly identified as kahwa. So the services are unrestricted. They cover all cafes regardless of the cafe's particular offerings, so they cover cafes that offer kahwa and cafes that don't. But we don't have any in the U.S. that offer kahwa, according to this record. We don't, but if this is our court to register, kahwa – Bayou would be free at that moment to start offering kahwa in its cafes, and that use would be covered by the registration. So the full scope of the identified services must be taken into account. Well, you've made an argument on page 30 of your brief, which picks up on something the board held at page 19, and it kind of puzzled me. You say on page 30 of your brief, as the board explained, Bayou would have enforceable rights against any cafe that serves kahwa in the future. How is that true? And you say it's undesirable. You suggest, and unfortunately the board found, that somehow if we allow Bayou to register this mark, that it could somehow go after people that even attempt to sell that tea in the future. How is that true? It's when the term is used in a way as a mark that's confusing to Bayou's market would be an issue. So you agree, contrary to what the board found, because the board made a finding that made no sense to me, contrary to my understanding of the board's finding, you agree that a future coffee shop would be free to sell kahwa, and if they sold kahwa as one of their products, that wouldn't be prohibited somehow by this registrant. It would be in terms of how they're using the term for their services and whether that creates – Well, they can't name themselves kahwa, but they can sell it, right? Yeah, Dunkin' Donuts wants to sell kahwa. It's free to do it, even with this registration. Yes, Your Honor, that's right. So that's our position, Your Honor, is if the court disagrees, then the proper course would be to vacate and remand for the board to address the refusal that wasn't reached. What refusal that wasn't reached? There was a third refusal for a failure to submit a translation statement. It was unnecessary for the board to reach, so that would need to be resolved in the first instance by the board. Can you explain that to me? That's related to the coffee issue, and there was a requirement for Bayou to submit a translation statement of the mark, and it didn't. So there's a refusal for a failure to submit that translation statement, so there's issues surrounding that refusal that would need to be resolved. How could you now argue, after your arguments to this court, how could you go back and say now they can't register kahwa because it amounts to an Arabic translation of the word coffee? How could that still be on the table after this? Those issues came up in examination, and they weren't resolved by the board because they found it unnecessary to reach them because of the meaning that Bayou had established as a type of green tea. So you still think that this mark could arguably be rejected as a foreign language translation of the Arabic word coffee, which is spelled with a Q? All I was saying, Your Honor, is that there's a refusal. No, but is that the issue that you think remains open? Well, it's the issue of whether Bayou is required to submit this statement, the translation statement. Okay. Thank you, Your Honor. Thank you, Your Honor. May it please the court. What my colleague just said is extremely troubling to me, and it illustrates how this case has been a case of moving target all along. And the problem with remanding this case back is that USPTO wants to keep continuing refusing my client's right to have their trademark registered. But he suggested that there was some sort of procedural footfall by your client, i.e., you had an obligation to submit some sort of foreign language translation. I don't know the details of it, and that you hadn't yet complied with that. Is that correct? That is what the USPTO demanded, and we provided volumes of evidence that the coffee was spelled K-A-H-W-A has no foreign meaning. Therefore, a translation requirement is not necessary. And for that reason, I would strongly urge the court to direct USPTO to issue this trademark and not remand it back to restart the whole cycle of us arguing what we spent years of arguing with the examiner about whether this term has any meaning in a foreign language all over again. And, in fact, the entire premise of the board's decision and what USPTO has been arguing on appeal is that K-A-H-W-A has this established alternative English language meaning, which is precisely why we put this evidence in the record because that disqualifies the doctrine of foreign equivalence outright. And based on their concession, which is the entire premise of this appeal in the board's decision that consumers are so familiar with this drink and it's well-known, that disqualifies the doctrine of foreign equivalence under this board's precedent in Hebrew spirits and continental knowledge. Anything further? I just wanted to point out that what my colleague just said is extremely troubling in terms of USPTO took a position that under this Supreme Court makeup case, the USPTO can reject a trademark that is not currently descriptive or generic based on a speculation that it may become such in the future, which is exactly what my counterpart just said. So I would strongly urge the board to not allow the USPTO to issue these types of recommendations. You don't just urge us, you strongly urge us. Duly noted. Okay, counsel, thank you for your argument. This case is taken under submission. Thank you, Your Honor.